IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

JUL 26 2013

CLERK, U.S. DISTRICT COURT
By_____
            Deputy

| | | |
|---|---|---|
| GERALD REYELTS and<br>BEATRIZ REYELTS, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  4:12-CV-0112-BJ |
| | § | |
| CARY JAY CROSS, CARY J. CROSS, | § | |
| P.C., LON SMITH & ASSOCIATES, | § | |
| INC. and A-1 SYSTEMS, INC. | § | |
|  d/b/a LON SMITH ROOFING AND | § | |
| CONSTRUCTION, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER
AND
FINDINGS OF FACT AND CONCLUSIONS OF LAW

On April 23, 2013, the Court entered its Order Granting Plaintiffs' Motion for Default

Judgment and Setting Hearing on Damages and Denying Defendants' Motion to Set Aside Clerk's

Entry of Default and Motion for Leave to File Amended Answer ("April 23 Order"), which such

order is incorporated herein for all purposes.  Pursuant to the notice given in the Court's April 23

Order, this Court held a hearing on the issue of damages on May 28, 2013.

At the hearing on May 28, Plaintiffs Gerald and Beatriz Reyelts ("Gerald," "Beatriz," or

collectively, "the Reyelts") appeared in person and by and through their counsel of record, H. Dustin

Fillmore III and Charles W. Fillmore of The Fillmore Law Firm.  Defendants Cary Jay Cross and

Cary Jay Cross, P.C. ("Cross Defendants")  appeared in person by and through Cary Jay Cross.

Defendants Lon Smith & Associates Inc. and A-1 Systems, Inc. d/b/a  Lon Smith Roofing and

Construction ("Lon Smith Defendants") appeared by and through their counsel of record, Kathryn Shilling, and their corporate representative, Chief Executive Officer David Cox.[1]

After all parties made opening remarks, the Court heard evidence on the two remaining issues before the Court, namely, (1) the amount, if any, that would reasonably compensate Plaintiffs for their actual damages caused by Defendants' unlawful conduct as already determined by the Court; and (2) the amount of Plaintiffs' attorneys' fees. With the Court having taken judicial notice of its file in this matter, Plaintiffs called three witnesses (Gerald, Beatriz, and their counsel H. Dustin Fillmore III), and the Court admitted without objection Plaintiffs' Exhibits 1 though 14. Defendants called two witnesses (Cary Jay Cross and David Cox), and the Court admitted without objection Defendants' Exhibits 1 and 2.

Pursuant to an order dated May 29, Plaintiffs submitted a proposed Final Judgment[2] to the Court, which has not been objected to by the Defendants, and Defendants filed a trial brief on damages [doc. # 42] and objections to Plaintiffs' attorneys' fees [doc. # 43]. The Court is now ready to enter its findings of fact and conclusions of law in this matter. A separate Final Judgment will be entered this same day.

Accordingly, the Court, after having considered, *inter alia*, the Clerk's Entry of Default, the Court's prior orders and docket in this matter, the evidence before the Court, the arguments of counsel, and all law applicable thereto, is of the opinion and so finds that Plaintiffs are entitled to final judgment from and against Defendants as follows.

---

[1] The Court notes that on July 1, 2013, the Court granted Defendants' Motion to Substitute Attorney, substituting Rick Disney with the law firm of Cotten Schmidt & Abbott, LLP, as lead attorney for Defendants Lon Smith & Associates Inc. and A-1 Systems, Inc.

[2] Defendants have not objected to nor submitted any opposing proposal to Plaintiffs' proposed Final Judgment. However, after researching the issues further, the Court has made some modifications to the Plaintiffs' proposed Final Judgment to comport with the law and the record before the Court.

## I. FINDINGS OF FACT

Accepting as true the well-pleaded facts in Plaintiffs' First Amended Complaint, *see Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Motley v. Rundle*, 340 F. Supp. 807, 809 (E.D. Pa. 1972), and the evidence adduced at the May 28 hearing, the Court finds as follows:

In or around May 2011, hail damaged the roof on the home of the Reyelts. Soon after, a representative of the Lon Smith Defendants visited the Reyelts' home and offered their roofing services, including assessment of the damage to the Reyelts' roof caused by the hail.

Beatriz is a 69-year-old, retired first grade school teacher who does not possess any special knowledge or expertise regarding assessing roof damage caused by hail or estimating the materials, services, and costs needed to repair such damage. At all times relevant to this matter, the Reyelts relied upon the Lon Smith Defendants' knowledge and expertise to determine the extent of the repairs, if any, that were necessary to protect their roof from future damage and whether any proposed upgrades would be reasonable in light of the cost.

After assessing the damage to the roof, the Lon Smith Defendants recommended to Beatriz that the Reyelts replace the roof on their home. On June 27, 2011, Beatriz signed an "Agreement" that the Lon Smith Defendants had prepared and furnished to her that day. Beatriz signed the "Agreement" relying upon the Lon Smith Defendants' representations, including the representations and promises set forth in the "Agreement." A true and correct copy of the "Agreement" is attached to Plaintiffs' First Amended Original Complaint as Exhibit A and was admitted into evidence at the May 28, 2013 hearing.

The "Agreement" provides, among other things, the following:

> This Agreement is for FULL SCOPE OF INSURANCE ESTIMATE AND UPGRADES and is subject to insurance company approval. By signing this agreement homeowner [the Reyelts] authorizes Lon Smith Roofing and Construction ("LSRC") to pursue homeowners['] best interest for all repairs, at a price agreeable to the insurance company and LSRC, and at NO ADDITIONAL COST TO HOMEOWNER EXCEPT THE INSURANCE DEDUCTIBLE AND UPGRADES. The final price agreed to between the insurance company and LSRC shall be the final contract price.

By signing the "Agreement," Beatriz purportedly authorized the following: "I hereby authorize my insurance company and/or mortgage company to make payment for completed repairs directly to LSRC and mail directly to same."

At all times relevant to this cause, the Lon Smith Defendants were aware that the Reyelts' roof was covered by a homeowners insurance policy insured by Farmers Insurance Group ("Farmers"), which insured the Reyelts' property for losses caused by events such as hail. The Lon Smith Defendants, as part of their practice and routine in the roofing construction business, were experienced and knowledgeable in working with various insurance carriers to secure payment for their services from clients' homeowners insurance policies.

Beatriz was not experienced or sophisticated in terms of knowing how to secure Farmers' agreement to pay the Lon Smith Defendants for the roof repairs that the Lon Smith Defendants had said were necessary. By signing the "Agreement," Beatriz reasonably believed that she had authorized the Lon Smith Defendants to act on the Reyelts' behalf in coming to an agreement with Farmers concerning the price Farmers would pay for the repairs to the Reyelts' roof. By signing the "Agreement," Beatriz reasonably believed that she had authorized Farmers to make payment for completed repairs directly to the Lon Smith Defendants. The "Agreement" purported to give the Lon

---

Smith Defendants, in exchange for compensation, the authority and obligation to act on behalf of the Reyelts in negotiating for or effecting the settlement of a claim for the loss or damage to the Reyelts' roof under the Farmers' homeowners insurance policy covering their home.

On June 27, 2011, the day Beatriz signed the "Agreement" with the Lon Smith Defendants, Chris Cook ("Cook"), a representative of the Lon Smith Defendants, was present in the Reyelts' home.   In all of his dealings with Beatriz, Cook was acting in the course and scope of his employment for the Lon Smith Defendants.  While present in the Reyelts' home, Cook requested Beatriz to call her Farmers agent and request a claim number.  In Cook's presence, Beatriz called her Farmers insurance agent and, after notifying her agent of the damage to the their roof and the Reyelts' intent to use the Lon Smith Defendants to repair such damage, requested a claim number.

In response to Beatriz's specific request for a claim number, her Farmers agent gave her a number, 923671457, which Beatriz gave to Cook, who wrote the number down on the "Agreement" as the Reyelts' claim number under their insurance policy.  The "claim number" appearing on the "Agreement" is 923671457.  Beatriz was not aware at the time that the number her Farmers agent gave her was not a claim number but her insurance policy number.  The Lon Smith Defendants knew or had reason to know that the number Beatriz received from her Farmers agent was not a Farmers claim number.

Beatriz and Cook signed and initialed the "Agreement."  Prior to any upgrades, the total price under the "Agreement" was $14,775.48.  As a part of the "Agreement," Beatriz and Cook also initialed and signed a "Change Order," which purported to require the Reyelts to pay an additional $1,176.00 for alleged upgrades.  As to the upgrade charge of $1,176.00, Cook represented that the upgrades would lower the Reyelts' homeowners insurance costs and that he would contact the

Reyelts' insurance carrier to make sure that the Reyelts received credit for the upgrade and an improved insurance rate from their insurance carrier.   In addition, Cook assured Beatriz that he would "handle all of that."  The total price under the "Agreement" was $15,951.48, including the upgrades.

From the time Beatriz signed the "Agreement" on June 27, 2011, until the Lon Smith Defendants represented that they had completed working on the Reyelts' home on or about August 15, 2011, the Lon Smith Defendants did not (1)  contact Farmers in any form or manner, directly or indirectly, whether by direct contact, telephone, fax, email, mail or other form of communication, with respect to the Reyelts, the Reyelts' home, or the repairs to the roof on the Reyelts' home; (2) contact the Reyelts' Farmers insurance agent, Valerie Webber, in any form or manner, directly or indirectly, whether by direct contact, telephone, fax, email, mail or other form of communication, with respect to the Reyelts, the Reyelts' home, or the repairs to the roof on the Reyelts' home;  or (3) contact any person purporting to act with or on behalf of Farmers in any form or manner, directly or indirectly, whether by direct contact, telephone, fax, email, mail or other form of communication, with respect to the Reyelts, the Reyelts' home, or the repairs to the roof on the Reyelts' home.

Prior to the Lon Smith Defendants completing the installation of a new roof on the Reyelts' home, the Lon Smith Defendants did not reach an agreement nor attempt to reach an agreement with Farmers regarding the price for the repairs to the Reyelts' roof.   Likewise, prior to the Lon Smith Defendants' completing the installation of a new roof on the Reyelts' home, the Lon Smith Defendants did not speak with or work with any adjuster or representative from Farmers to come to an agreement regarding any of the following:

a.      the extent of the damage to the Reyelts' roof;

b.      the repairs deemed necessary to repair such damage; or

c.      the price Farmers was willing to pay for the repairs to
the Reyelts' roof.

On or about August 15, 2011, a Lon Smith Defendants' representative visited the Reyelts' home and requested the Reyelts to initial a "20 Point Checklist" purportedly confirming the work performed by the Lon Smith Defendants. In addition to initialing the "20 Point Checklist," the Lon Smith Defendants' representative also requested that the Reyelts pay what was represented to be the amount owed by the Reyelts' under the "Agreement." As of August 15, 2011, the amount the Lon Smith Defendants' representative represented the Reyelts owed under the "Agreement" was $1,176.00. As of August 15, 2011, the amount the Lon Smith Defendants' representative requested that the Reyelts pay under the "Agreement" was $1,176.00.

On or about August 15, 2011, in response to the Lon Smith Defendants' request for the Reyelts to confirm that the Lon Smith Defendants had performed all work specified, Beatriz notified the Lon Smith Defendants' representative that she had no means of confirming whether the Lon Smith Defendants had performed all such work. In response to Beatriz's notification, the Lon Smith Defendants' representative suggested that Beatriz climb onto the roof and inspect the roof herself. Due to her age and physical limitations, Beatriz could not and, thus, did not climb onto the roof to inspect the Lon Smith Defendants' work. The Reyelts relied upon the Lon Smith Defendants' representations that the work the Lon Smith Defendants promised to perform and allegedly performed was actually performed.

On or about August 15, 2011, the Reyelts initialed and signed the Lon Smith Defendants' "20 Point Checklist" and tendered a check to the Lon Smith Defendants in the amount of $1,176.00.

---

On or about August 15, 2011, the Lon Smith Defendants accepted the Reyelts' tendered payment of $1,176.00. At no point in time during the Lon Smith Defendants' August 15, 2011 conversation with the Reyelts did the Lon Smith Defendants, through their agents or otherwise, indicate that the Reyelts owed anything beyond the tendered amount of $1,176.00 under the "Agreement" or indicate that the Lon Smith Defendants would pursue the remaining balance of $14,775.48 under the "Agreement" from the Reyelts and not Farmers. Further, at no point in time during the August 15, 2011 conversation with the Reyelts did the Lon Smith Defendants, through their agents or otherwise, inform the Reyelts that the Lon Smith Defendants had not taken the following actions:

a.      contacted Farmers in an attempt to secure an agreement with Farmers concerning the price Farmers would pay for the roof repairs as set forth in the "Agreement;"

b.      secured an agreement with Farmers concerning the price Farmers would pay for the roof repairs as set forth in the "Agreement;" or

c.      obtained payment from Farmers for the roof repairs performed by the Lon Smith Defendants.

Despite the Reyelts' tendering payment and despite the Lon Smith Defendants' failure to pursue a claim under the Reyelts' homeowners insurance policy, on or about September 14, 2011, the Lon Smith Defendants sent Beatriz a demand letter for the balance allegedly owed under the "Agreement." (Plaintiffs' Exhibit ("Pls.' Ex.") 3B at May 28, 2013 Hearing ("May 28 Hr'g").) As of September 14, 2011, the amount the Lon Smith Defendants claimed was owed under the "Agreement" was $14,775.48, or the difference between the $1,176.00 paid by the Reyelts and the total amount of $15,951.48 set forth in the "Agreement." (*Id.*) The Lon Smith Defendants' September 14, 2011 demand letter threatened "further collection activity" if Beatriz failed to "remit the balance due or contact our office immediately." (*Id.*)

Believing that Farmers had not paid the Lon Smith Defendants, Beatriz immediately contacted her Farmers agent to ascertain the reason Farmers had failed to do so. Upon speaking with her agent, Beatriz discovered the following:

    a.    the "claim number" on the "Agreement" was not a claim number but the Reyelts' policy number;

    b.    prior to the Lon Smith Defendants' installing the new roof on the Reyelts' home, the Lon Smith Defendants never contacted Farmers in an attempt to secure an agreement with Farmers concerning the price Farmers would pay for the roof repairs as set forth in the "Agreement;"

    c.    prior to the Lon Smith Defendants' installing the new roof on the Reyelts' home, the Lon Smith Defendants did not reach an agreement nor attempt to reach an agreement with Farmers regarding the price for the repairs to the Reyelts' roof; and

    d.    prior to the Lon Smith Defendants' installing the new roof on the Reyelts' home, the Lon Smith Defendants did not speak with or work with an adjuster or a representative from Farmers to come to an agreement regarding the extent of the damage to the Reyelts' roof, the repairs deemed necessary to repair such damage, or the price Farmers was willing to pay for the repairs to the Reyelts' roof.

Beatriz immediately thereafter contacted Farmers' home office and, thereafter, a Farmers insurance adjuster visited the Reyelts' home to examine the roof.

On or about October 6, 2011, the Reyelts learned that Farmers was refusing to pay for any of the repairs performed by the Lon Smith Defendants allegedly because the repairs to the Reyelts' roof were completed prior to Farmers' evaluation of the damage. (Pls.' Ex. 4 at May 28 Hr'g.) On or about October 31, 2011, the Lon Smith Defendants sent a second demand letter for the unpaid balance allegedly owed under the "Agreement." (Pls.' Ex. 3E at May 28 Hr'g.) Under the second demand letter, the Lon Smith Defendants sought an amount of $14,877.49, which included the initial

amount of $14,775.48 sought in the Lon Smith Defendants' September 14, 2011 demand letter, plus a finance charge of $102.01. (*Id.*)

The Lon Smith Defendants' October 31, 2011 demand letter threatened Beatriz to act immediately in order "to preserve your good credit standing," claiming that she had "done nothing yet to protect it [her credit standing]." (*Id.*) The Lon Smith Defendants' October 31, 2011 demand letter also threatened that if Beatriz failed "to bring [the Reyelts'] account up to date or to contact [the Lon Smith Defendants] and make some accommodations, [the Lon Smith Defendants] will have to pursue further collection activity." (*Id.*) After receiving the Lon Smith Defendants' October 31, 2011 demand letter, Beatriz requested the assistance of The Fillmore Law Firm to represent the Reyelts concerning the debt allegedly owed under the "Agreement."

On November 4, 2011, Charles W. Fillmore contacted Mark Blahitka ("Blahitka"), Director of Agency Services for the Lon Smith Defendants and informed Blahitka that he was representing the Reyelts. As of November 4, 2011, the Lon Smith Defendants were on notice and fully aware that the Reyelts were represented by an attorney. Despite the Lon Smith Defendants' awareness of the Fillmore Law Firm's representation of the Reyelts, on or about January 25, 2012, the Cross Defendants, on behalf of the Lon Smith Defendants, sent a letter directly to the Reyelts demanding payment. (Pls.' Ex. 5B at May 28 Hr'g.)

In the Defendants' demand letter, Mr. Cross, immediately after specifying that he had been retained by the Lon Smith Defendants, stated the following:

> On or about June 27, 2011, you entered into an agreement with Lon Smith Roofing to re-roof your home. It is our understanding that your insurance company has fully funded your claim and that you have received a check. This payment has been received by you and now you are wrongfully withholding said payment in breach of your written and fully executed contract. You currently owe Lon Smith Roofing $15,951.48.

(*Id.*)  The Cross Defendants also threatened to file suit, attaching a draft of a court petition to the letter.  (*Id.*)  The Cross Defendants also asserted that under their employment agreement with the Lon Smith Defendants, "[Mr. Cross has] been assigned an interest in the claim against you."  (*Id.*)

The present case was filed by Plaintiffs on February 24, 2012.  Approximately a week after being served with the instant lawsuit, the Lon Smith Defendants, by and through the Cross Defendants, filed a civil lawsuit against Beatriz in County Court at Law No. 1, Tarrant County, Texas, on March 5, 2012.

As a proximate cause of Defendants' conduct, the Reyelts have sustained damages, including economic damages as well as severe mental distress and anguish.

## II.  CONCLUSIONS OF LAW

### A.    Lon Smith "Agreement" Declared Illegal, Void and Unenforceable.

On November 27, 2012—prior to Defendants' default in this matter—the Court entered its Order Granting Plaintiffs' Rule 12(c) Motion for Partial Judgment.  For the reasons set forth in Plaintiffs' Rule 12(c) motion and based on the Lon Smith Defendants' judicial admissions, including those voluntarily made in their original answer, the plain language of the "Agreement" dated June 27, 2011, between Plaintiffs and the Lon Smith Defendants, and the applicable law, including relevant provisions of Chapter 4102 of the Texas Insurance Code, the Court ruled that the June 27, 2011 "Agreement" was illegal in its entirety, void and unenforceable.  The Court's November 27, 2012 order is now final.  In further view of the Court's April 23 Order, Plaintiffs are entitled to a judicial declaration declaring that the June 27, 2011 "Agreement" is illegal in its entirety, void and unenforceable, and that Plaintiffs are not liable for payment of any past or future services rendered under said "Agreement."  *See* Tex. Ins. Code §§ 4102.206(a), 4102.207(a), (b).

**B .   Lon Smith Defendants Liable to Each Plaintiff for Damages, Attorneys' Fees, and Costs.**

      **1.   Texas Debt Collection Practices Act.**

Based upon the facts found by the Court herein and in view of the evidence presented at the hearing on May 28, 2013, the Lon Smith Defendants are liable to Plaintiffs for violations of the Texas Debt Collection Practices Act, Texas Finance Code § 392.001 *et seq.* ("TDCPA"), which such violations were a proximate cause of mental anguish damages to Plaintiffs. In particular, the Lon Smith Defendants, directly and through the conduct of their agents, including their retained debt collection counsel, the Cross Defendants, violated the TDCPA, including section 392.303(a)(2) and section 392.304(a)(8) and (a)(19). Accordingly, Plaintiffs are entitled to recover from the Lon Smith Defendants their mental anguish damages together with an award for their attorneys' fees reasonably related to the amount of work performed and costs. *See* Tex. Fin. Code § 392.403(a)(1), (b).

      **2.   Texas Deceptive Trade Practices Act.**

Based upon the facts found by the Court herein and in view of the evidence presented at the hearing on May 28, 2013, the Lon Smith Defendants are liable to Plaintiffs for violations of the Texas Deceptive Trade Practices Act, Texas Business and Commerce Code § 17.41 *et seq.* ("DTPA"), which such violations were a producing cause of both economic damages and mental anguish damages to Plaintiffs. In particular, the Lon Smith Defendants engaged in false, misleading and deceptive acts and practices declared to be unlawful under section 17.46 of the DTPA, including sections 17.46(b)(5), (b)(7), (b)(9), and (b)(12). The Lon Smith Defendants also engaged in an unconscionable action or course of action as prohibited by section 17.50(a)(3)of the DTPA. The Lon Smith Defendants' use and employment of an agreement that was and is illegal and violative of Chapter 4102 of the Texas Insurance Code constituted an act or practice in violation of Chapter 541

of the Texas Insurance Code and, thus, a violation of section 17.50(a)(4) of the DTPA. *See* Tex. Ins.

Code § 4102.206(c). Moreover, the Lon Smith Defendants' violations of the TDCPA—both

directly and through the conduct of their agents, including their retained debt collection counsel, the

Cross Defendants—constituted a deceptive trade practice under the DTPA for which the Lon Smith

Defendants are liable to Plaintiffs. *See* Tex. Fin. Code § 392.404 ("A violation of this chapter is a

deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and is

actionable under that subchapter.").

As previously determined by the Court, such wrongful conduct was committed "knowingly"

and "intentionally," as those terms are defined in section 17.45(9) and (13), respectively, of the

DTPA. *See* April 23 Order at 4. Accordingly, Plaintiffs are entitled to recover from the Lon Smith

Defendants their economic damages and mental anguish damages together with an award of not

more than three times actual damages.[3] *See* Tex. Bus. & Com. Code § 17.50(b)(1). Plaintiffs are

---

[3]Plaintiffs' proposed judgment appears to interpret section 17.50(b)(1) as meaning that they can add up to three times the original economic and mental anguish awards for a knowing and intentional violation *in addition* to the original amount of the economic and mental anguish awards. Plaintiffs' position has support, albeit in dicta, in *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006). In that case, the Texas Supreme Court made a statement in dicta that has been interpreted by some as stating, as proposed by Plaintiffs, that the plaintiff in a DTPA case could, in addition to the original award of economic and mental anguish damages, recover up to three times the amount of economic and mental anguish damages for a knowing and intentional violation. *See id.* at 304 & n.6 ("For a DTPA violation, she could recover economic damages, mental anguish, and attorney's fees, but not additional damages beyond $21,639 (three times her economic damages.)"). In other words, the court in *Chapa* treated the language in section 17.50(b) as allowing a quadruple multiplier. However, prior to the court's decision in *Chapa*, "the Texas Supreme Court had held in *Jim Walter Homes, Inc. v. Valencia* [, 690 S.W.2d 239, 241 (Tex. 1985),] that the 1979 version of the DTPA section on additional damages . . . allowed no more than a total of three times actual damages." Joseph Vale, *Not More Than Dicta? Whether the DTPA's Additional Damages Can Quadruple Economic and Mental Anguish Damages Under Tony Gullo Motors I, L.P. v. Chapa*, 63 Baylor L. Rev. 934, 937 (2011) (footnotes omitted).

Since the court's decision in *Chapa*, there is a lack of consistency in the district and appellate courts in Texas in whether to apply the quadruple multiplier suggested in *Chapa* in claims under the DTPA. *Compare Bossier Chrysler-Dodge II, Inc. v. Riley*, 221 S.W.3d 749, 752 (Tex. App.—Waco 2007, pet. denied) and *Lin v. Metro Allied Ins. Agency*, 305 S.W.3d 1, 3-4 (Tex. App.—Houston [1st Dist.] 2007 (mem. op.), *rev'd per curiam on other grounds*, 304 S.W.3d 830 (Tex. 2009), *with Texas Mut. Ins. Co. v. Morris*, 287 S.W.3d 401, 434 (Tex. App.—Houston [14th Dist.] 2009), *rev'd per curiam on other grounds*, 383 S.W.3d 146 (Tex. 2012) *and Ramsey v. Spray*, No. 2-08-129-CV, 2009 WL 5064539, at *1 (Tex. App.—Fort Worth Dec. 23, 2009, pet. denied). After reviewing the cases, the Court concludes that it cannot rely on the dicta in *Chapa* to find that a quadruple multiplier is allowed under the provisions set forth in section 17.50(b)(1). The Court is not convinced that the Texas Supreme Court, if squarely presented with the issue, would rule

---

also entitled to an award for their court costs and reasonable and necessary attorneys' fees. *See* Tex. Bus. & Com. Code § 17.50(d).

**C.      Cross Defendants Liable to Each Plaintiff for Damages, Attorneys' Fees and Costs.**

Based upon the facts found by the Court herein and in view of the evidence presented at the hearing on May 28, 2013, the Cross Defendants are liable to Plaintiffs for violating the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), which such violations resulted in mental anguish damages to Plaintiffs. In particular, the Cross Defendants violated multiple provisions of the FDCPA, including sections 1692c, 1692d, 1692e, 1692e(2), 1692e(5), 1692f, 1692g(a)(3), 1692g(a)(4), and 1692g(a)(5). Accordingly, Plaintiffs are entitled to recover from the Cross Defendants mental anguish damages for their "personal humiliation, embarrassment, mental anguish and emotional distress." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 957 (9th Cir. 2011); Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50109 (Dec. 13, 1988) (FDCPA damages include "damages for personal humiliation, embarrassment, mental anguish, or emotional distress"). Additionally, Plaintiffs are entitled to recover from the Cross Defendants "the costs of the action, together with a reasonable attorney's fees as determined by the court." 15 U.S.C. § 1692k(a)(3).

### III.   Calculation of Plaintiffs' Actual Damages, Attorneys' Fees, and Costs.

**A.      Plaintiffs' Actual Damages.**

As the Court previously determined, Plaintiffs are entitled to recover from the Lon Smith Defendants $1,176.00, which represents the amount Plaintiffs paid to the Lon Smith Defendants

---

that section 17.50(b)(1) allows for a quadruple multiplier of economic and mental anguish damages. Instead, the Court, relying on the case precedent in *Valencia* and its progeny and the language in section 17.50(b)(1), concludes that section 17.50(b)(1) only allows for the adding of up to two times the original economic and mental anguish awards for a total of a triple multiplier.

under the illegal, void and unenforceable June 27, 2011 "Agreement." *See* April 23 Order at 3-4.

The "Agreement" and the debt that Defendants sought to collect in relation to such "Agreement"

pertained to services and goods that Plaintiffs jointly sought and acquired by purchase from the Lon

Smith Defendants in relation to their homestead. Accordingly, Plaintiffs are entitled to recover from

the Lon Smith Defendants $1,176.00 in economic damages. *See* Tex. Bus. & Com. Code §

17.50(b)(1), (b)(3).

As to mental anguish damages, a plaintiff may recover actual damages for mental anguish

under the FDCPA, 15 U.S.C. § 1692k(a)(1); the TDCPA, Tex. Fin. Code § 392.403(a)(2); and the

DTPA,[4] Tex Bus. & Com. Code 17.50(b)(1). *See Browne v. Portfolio Recovery Assocs., Inc.*, No.

H-11-02869, 2013 WL 871966, at *5 (S.D. Tex. Mar. 7, 2013) ("Actual damages [recoverable under

the FDCPA] include not only out-of-pocket expenses, but also damages for personal humiliation,

embarrassment, mental anguish, and emotional distress."); *Monroe v. Frank*, 936 S.W.2d 654, 661

(Tex. App.—Dallas 1996, writ dism'd w.o.j.). To recover such damages, the Plaintiffs must

introduce direct evidence of the nature, duration, and severity of the mental anguish, thus

establishing a substantial disruption in the Plaintiffs' daily routine. *See Bullock v. Abbott & Ross

Credit Services, L.L.C.*, No. A-09-413-LY, 2009 WL 4598330, at *3 (W.D. Tex., Dec. 3, 2009);

*Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 (Tex. 1997); *Parkway Co. v. Woodruff*, 901

S.W.2d 434, 444 (Tex. 1995). The evidence must show a "high degree of mental pain and distress

that is more than mere worry, anxiety, vexation, embarrassment, or anger." *Jabri v. Alsayyed*, 145

S.W.3d 660, 669 (Tex. App.–Houston [14th Dist.] 2004, no pet.). There must also be proof that the

---

[4]As set forth above, to be liable for mental anguish damages under the DTPA, the Defendants must have acted knowingly. Tex. Bus. & Com. Code § 17.50(b)(1). The Court has previously found that Defendants in this case did act knowingly (as well as intentionally) in violating the DTPA.

knowing, unconscionable action or course of action was a producing cause of the mental anguish. *Jabri*, 145 S.W.3d at 669 (citing *Latham v. Castillo*, 972 S.W.2d 66, 69 (Tex. 1998)).

In this case, Beatriz testified that the actions of the Lon Smith Defendants caused, *inter alia:* (1) her to feel devastated, scared, upset, angry, afraid, and embarrassed; (2) her and Gerald to have trouble sleeping; (3) her to have physical problems, including colitis exacerbation and stomach pain; (4) her to increase her dosage of Prozac medication; (5) her and Gerald to cancel a planned wedding anniversary trip; and (6) her and Gerald to contribute less money than they wanted to their son's wedding. (May 28, 2013 Hr'g Tr. ("Tr.") at 32-34, 38, 40-42, 48-50, 53-54.) Beatriz further testified that the actions of the Cross Defendants caused her to feel worried, upset, devastated, embarrassed, angry, and scared. (Tr. at 45, 48-50.) Beatriz also testified that the actions of the Lon Smith Defendants, through their attorney Cary J. Cross, in filing suit against her and Gerald in County Court at Law No. 1, Tarrant County, Texas on March 5, 2012, approximately a week after the Reyelts had filed the instant suit in this Court, further caused her to become very afraid, angry, humiliated, and scared. (Tr. at 47-52.)[5] Beatriz further stated that she cries more, worries about spending money, has recently seen a doctor for stress and been prescribed medication for anxiety, and has had to come out of retirement and go back to work as a result of the Defendants' actions. (Tr. 52-55.)

Gerald testified at the hearing that he agreed with all of Beatriz's testimony and confirmed that the Defendants' actions caused him and Beatriz to be worried, upset, angry, and embarrassed. (Tr. at 67-69.) He also confirmed that Defendants' actions had affected his ability to sleep. (*Id.*)

---

[5]According to the information provided by the parties at the May 28 hearing, the suit in the Tarrant County Court at Law #1 had been abated but not dismissed as of the date of the hearing. (Tr. 51.)

He further testified that Defendants' actions had caused him and Beatriz Reyelts to have marital difficulties, including geting irritated with each other sometimes and arguing. (Tr. at 68.)

Based upon the evidence in the record and Plaintiffs' testimony at the May 28 hearing before the Court, the Court finds that Plaintiffs have each sustained compensable mental anguish for which Defendants are liable.  Although mere worry, anxiety, embarrassment, or anger by itself would not be enough to support an award of mental anguish, there is evidence that Defendants' conduct caused a high degree of mental pain and distress in that it affected the Plaintiffs' ability to sleep, substantially disrupted their daily routine, forced Beatriz Reyelts to go back to work after she had retired and to see a doctor for stress, forced Plaintiffs to cancel a planned vacation and contribute less money to their son's wedding, and caused difficulties in Plaintiffs' marriage.  In addition, the evidence shows that the Defendants' actions were the producing cause of Plaintiffs' mental anguish.

The Court finds that the sum of money, if paid now in cash, that would fairly and reasonably compensate Plaintiff Beatriz Reyelts for her damages that resulted from Defendants' wrongful conduct as determined by the Court is as follows:

Mental anguish sustained in the past:

$25,000.00;

Mental anguish that, in reasonable probability, will be sustained in the future:

$0.

The Court further finds that the sum of money, if paid now in cash, that would fairly and reasonably compensate Plaintiff Gerald Reyelts for his damages that resulted from Defendants' wrongful conduct as determined by the Court is as follows:

Mental anguish sustained in the past:

$5,000.00;

Mental anguish that, in reasonable probability, will be sustained in the future:

$0.

Pursuant to section 33.003 of the Texas Civil Practice & Remedies Code, the Court finds that the following percentages of responsibility should be assigned to the Defendants for Plaintiffs' damages:

| | |
|---|---|
| The Lon Smith Defendants: | 70 % |
| The Cross Defendants: | 30 % |
| Total: | 100 %.[6] |

Moreover, the Court further determines that the Lon Smith Defendants are jointly and severally liable for all of the damages recoverable by the Plaintiffs. *See* Tex. Civ. Prac. & Rem. Code § 33.013(b)(1).

Accordingly, Plaintiff Beatriz Reyelts shall have and recover as her actual damages for her mental anguish, **$25,000.00,** constituting the total sum for all such damages found by the Court to result from the Defendants' wrongful conduct toward her. Such mental anguish damages shall be recovered as follows:

---

[6]The Court notes that Plaintiffs, in their proposed Final Judgment, request the Court to apply Texas law regarding proportionate liability set forth in Chapter 33 of the Texas Civil Practice and Remedies Code. *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 33.002(a)(2) ("This chapter applies to: . . . any action brought under the [DTPA] in which a defendant . . . is found responsible for a percentage of the harm for which relief is sought."). Because Defendants did not object to any provision of the Plaintiffs' proposed final judgment, the Court will apply Chapter 33 and proportion the damages accordingly. However, even if Chapter 33 does not apply, the Court would find that the Cross Defendants' actions caused the Plaintiffs $9,000 in mental anguish damages ($7,500 to Beatriz and $1,500 to Gerald) and the Lon Smith Defendants' actions caused the Plaintiffs $21,000 in mental anguish damages ($17,500 to Beatriz and $3,500 to Gerald).

(a)     Plaintiff Beatriz Reyelts shall have and recover from the Lon Smith Defendants, jointly and severally, as her actual damages for her mental anguish, the sum of **$17,500.00**, constituting the total sum for all such damages found by the Court multiplied by the percentage of responsibility proportioned to the Lon Smith Defendants, namely, 70%. *See* Tex. Civ. Prac. & Rem. Code §§ 33.002(a)(2), 33.003;

(b)     Plaintiff Beatriz Reyelts shall have and recover from the Cross Defendants, jointly and severally, as her actual damages for her mental anguish, the total sum of **$7,500.00**, constituting the total sum for all such damages found by the Court multiplied by the percentage of responsibility proportioned to the Cross Defendants, namely, 30%. *See* Tex. Civ. Prac. & Rem. Code §§ 33.002(a)(2), 33.003.

Accordingly, Plaintiff Gerald Reyelts shall have and recover as his actual damages for his mental anguish, **$5,000.00**, constituting the total sum for all such damages found by the Court to result from the Defendants' wrongful conduct toward him. Such mental anguish damages shall be recovered as follows:

(a)     Plaintiff Gerald Reyelts shall have and recover from the Lon Smith Defendants, jointly and severally, as his actual damages for his mental anguish, the sum of **$3,500.00**, constituting the total sum for all such damages found by the Court multiplied by the percentage of responsibility proportioned to the Lon Smith Defendants, namely, 70%. *See* Tex. Civ. Prac. & Rem. Code §§ 33.002(a)(2), 33.003;

(b)     Plaintiff Gerald Reyelts shall have and recover from the Cross Defendants, jointly and severally, as his actual damages for his mental anguish, the sum of **$1,500.00**, constituting the total sum for all such damages found by the Court multiplied by the percentage of responsibility proportioned to the Cross Defendants, namely, 30%. *See* Tex. Civ. Prac. & Rem. Code §§ 33.002(a)(2), 33.003.

The Court further finds that Plaintiff Beatriz Reyelts shall have and recover from the Lon Smith Defendants, jointly and severally, the additional sum of **$35,000.00**, constituting an award of not more than three times the amount of her actual damages for her mental anguish and consistent with the Lon Smith Defendants' proportion of such damages.

The Court further finds that Plaintiff Gerald Reyelts shall have and recover from the Lon Smith Defendants, jointly and severally, the additional sum of **$7,000.00**, constituting an award of not more than three times the amount of his actual damages for his mental anguish and consistent with the Lon Smith Defendants' proportion of such damages.

## B.     Plaintiffs' Attorneys' Fees and Costs.

With regard to Plaintiffs' request for attorneys' fees, the Court has considered the evidence presented at the May 28 damages hearing, including the very thorough testimony on the issue presented by the Fillmore Law Firm, the voluminous and detailed billing records of the Fillmore Law Firm, and the full record in this case.

Accordingly, the Court finds that the number of hours expended by the following individuals involved in the representation of Plaintiffs in this matter is as follows:[7]

---

[7]The Court compiled these hour calculations by considering:  (1) Plaintiffs' Exhibit 10 ("Ex. 10") submitted at the May 28 hearing (for hours expended between November 21, 2011 and May 26, 2013); (2) Tab F to Plaintiffs' Appendix in Support of Plaintiffs' Responses to Defendants' Post-Hearing Briefs Regarding Damages and Attorneys' Fees [doc. # 46] ("Tab F")(for hours expended from May 27, 2013 to June 19, 2013); and (3) Appendix G to Plaintiffs'

Attorney / Partner H. Dustin Fillmore III:    __48__  hours;

Attorney / Partner Charles W. Fillmore:    __445__  hours;

Attorney / Associate R. Layne Rouse:    __307__  hours;

Paralegal Susan Garay:    __1__  hour;

Paralegal Jamie Aliff:    __7__  hours.

Moreover, in determining the reasonable and appropriate hourly rates within the community for the services rendered by the following individuals, the Court finds, based on the evidence presented by Plaintiffs at the May 28 hearing and not objected to by Defendants at or after the hearing, that the following hourly rates are reasonable and within the prevailing market rate, including in particular for attorneys of a similar skill and experience level and reputation:

Attorney / Partner H. Dustin Fillmore III:    $400 per hour;

Attorney / Partner Charles W. Fillmore:    $400 per hour;

Attorney / Associate R. Layne Rouse:    $200 per hour;

Paralegal Susan Garay:    $120 per hour;

Paralegal Jamie Aliff:    $120 per hour.

Accordingly, multiplying the number of hours expended by the appropriate hourly rates found by the Court, Plaintiffs seek to recover the total sum of $259,560.00 as their reasonable attorneys' fees from Defendants.

Following the May 28 hearing, Defendants filed objections to the amount of attorneys' fees claimed by Plaintiffs. First, Defendants object that The Fillmore Law Firm billing records include

---

Appendix in Support of Combined Response to the Motions and Briefs to Reconsider the Order Granting Plaintiffs' Motion for Default Judgment and Setting Hearing on Issue of Damages and Denying Defendants' Motion to Set Aside Clerk's Entry of Default and Motion for Leave to File Amended Answer [doc. 63] (for hours expended from June 27, 2013 to July 2, 2013). Also, the number of hours have been rounded to the nearest hour.

hours expended on work not attributable to Defendants in this case. In sum, Defendants claim that

fee entries "beginning 11/21/2011 and continuing to 1/16/12 pertain only to Farmers and are not

attributable to the Claims against Defendants" and "all pleading drafting prior to 2/13/12 pertains

to claims against Farmers." (Defendants' Objections to Attorney's Fees ("Defs.' Objs.") at 3.) Thus,

Defendants assert that such fees should be segregated from inclusion in the attorneys' fees award in

this case. The Court disagrees. Such billing entries and work performed by The Fillmore Law Firm

share a "common core of facts" with Plaintiffs' claims against Defendants in the present case, and

the Court declines to sift through the voluminous entries to try to parse out the pre-suit entries and

work performed by The Fillmore Law Firm in this regard. *See La. Power & Light Co. v. Kellstrom*,

50 F.3d 319, 327 (5th Cir. 1995).

Next, Defendants claim that the Court should "segregate" the attorneys' fees claimed by the

Fillmore Law Firm between the defendants themselves, i.e. "[t]o the extent these itemizations can

be segregated, Plaintiffs should so segregate their fees between the Defendants." (Defs.' Objs at 3.)

In this case, Plaintiffs have segregated their claim for attorneys' fees for services provided before the

Cross Defendants' letter of January 27, 2012, such that all attorneys' fees sought by Plaintiffs prior

to that date are sought only as to the Lon Smith Defendants. All fees after that date are claimed by

Plaintiffs against all Defendants as being so "interrelated" as to not require segregation. *See*

*Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007) (citing *Stewart Title Guar.*

*Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991)). The Court agrees with Plaintiffs on this issue.

Accordingly, the only fee segregation that will be performed will be for those fees incurred prior to

January 27, 2012. Based upon the foregoing, the Court finds that all fee entries contained in

Plaintiffs' Counsels' fee statement admitted at the May 28 hearing, Ex. 10, prior to January 27, 2012,

the date Plaintiffs received the letter from the Cross Defendants, should be assessed only against the Lon Smith Defendants.

Finally, Defendants object that the total fees claimed by Plaintiffs are "excessive and unreasonable." (Defs.' Objs at 4.) Plaintiffs respond that Defendants have not challenged the billing entries submitted by Plaintiffs nor have they refuted any of the "lodestar" factors evidence presented by counsel for Plaintiffs. The Court recognizes the "strong presumption" that the lodestar amount is reasonable, and it should only be those "rare circumstances" in which the lodestar does not adequately reflect a reasonable fee. *See Perdue v. Kenny A.,* 130 S. Ct. 1662, 1672-73 (2010). However, in the present case, the totality of the circumstances and the nature of the claims ultimately presented cause the Court to conclude that the total attorneys' fees amount sought by Plaintiff is excessive. This is in no way a criticism by the Court regarding the efforts of The Fillmore Law Firm in zealously pursuing Plaintiffs' claims in this case. In fact, The Fillmore Law Firm's very thorough representation of Plaintiffs in this matter is commendable and the briefing provided by Plaintiffs has been exceptional. But in the end, the Court concludes that a reduction of attorneys' fees in the amount of 25% is appropriate in this case.[8] Thus, the total amount of attorneys' fees to be awarded to Plaintiffs in this case is **$194,670.00**.

Accordingly, Plaintiffs are entitled to recover from the Lon Smith Defendants the sum of **$4,780.00**, which represents the Plaintiffs' attorneys' fees incurred between November 21, 2011 and through January 27, 2012, the date that Plaintiffs received the letter from the Cross Defendants dated January 25, 2012.

---

[8]This reduction will be applied to post-January 27, 2012 attorneys' fees which are assessed against all Defendants.

Plaintiffs are entitled to recover and shall have and recover all remaining attorneys' fees awarded herein, **$189,890.00**, from all Defendants, jointly and severally.

Moreover, the Court further finds that the total sum of **$2,025.82**[9] was expended in reasonable and necessary costs in representing Plaintiffs in this action and that the charges for such services were reasonable and customary, which sum Plaintiffs are entitled to recover from Defendants, jointly and severally.

Finally, the Court further finds that Plaintiffs are entitled to recover from all Defendants, jointly and severally, the attorneys' fees and costs incurred by Plaintiffs on any appeal of the Court's judgment in an amount not to exceed **$50,000.00**.

## C.    Pre- and Post-Judgment Interest

Plaintiffs shall have and recover from Defendants, respectively, prejudgment interest on the $1,176.00 in economic damages and $30,000.00 in mental anguish damages awarded herein against Defendants at the rate of 3.25% per annum, compounded annually, beginning on February 24, 2012, the date that this action was filed, and ending on the date before this judgment is signed. *See Jones v. Lockhart, Morris & Montgomery, Inc.*, No. 1:11-CV-373, 2012 WL 1580759, at *5 (E.D. Tex. Feb. 3, 2012) (awarding prejudgment interest on damages assessed under both the FDCPA and the Telephone Consumer Protection Act, 47 U.S.C. § 227, concluding "that the prime rate, compounded annually, is reasonable in calculating the award of prejudgment interest in this case"), *adopted in* 2012 WL 1580636 (E.D. Tex. May 4, 2012); *Giddy Up, LLC v. PRISM Graphics, Inc.*, No. 3:06-CV-948-B, 2007 WL 3125312, at *1 (N.D. Tex. Oct. 24, 2007) (awarding prejudgment interest on

---

[9]$1,094.54 (for expenses incurred from 1/27/2012 through 5/26/2013; *see* Ex. 10) + $931.28 (for expenses incurred from 5/27/2013 through 6/19/2013; *see* Tab F) = $2025.82.

actual damages assessed under Texas state law claims, including DTPA violations); *see also* Bd. of Governors of the Fed. Reserve Sys., *Selected Interest Rates (Weekly)* (July 22, 2013), http://www.federalreserve.gov/releases/h15/current/ (reporting that the prime rate as of July 22, 2013 is 3.25%). Plaintiffs shall not recover prejudgment interest on the additional damages awarded under the DTPA because the DTPA prohibits an award of prejudgment interest applicable to such additional damages. *See* Tex. Bus. & Com. Code § 17.50(f);

Plaintiffs shall have and recover from Defendants, respectively, postjudgment interest on all amounts awarded herein against them (damages, attorneys' fees, costs, and prejudgment interest) at the rate of 0.11% per annum, compounded annually, from the date of judgment until the judgment is paid in full. *See Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991) (pointing out that "[p]ostjudgment interest on money judgments recovered in federal district court is governed by 28 U.S.C. § 1961(a)" and "direct[ing] the district court to award post-judgment interest on the entire amount of the final judgment, including damages, prejudgment interest, and attorney's fees"); United States District Court for the Northern District of Texas, *Publications - Post Judgment Rate* (July 22, 2013), http://www.txnd.uscourts.gov/publications/pjrate.html (reporting that the current postjudgment interest rate from July 22 to July 28, 2013 is 0.11%).

**SO ORDERED**.

**SIGNED** this __26ᵀᴴ__ day of July, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE